UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WAYNE DINSMORE GRAY,

      Petitioner,

v.

KELLY SANTORO,

      Respondent.

Case No. 2:20-cv-01844-SB-SP

ORDER ACCEPTING FINDINGS,
CONCLUSIONS, AND
RECOMMENDATIONS OF THE
U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the petition (Dkt. No. 1), the records on file, the Report and Recommendation (R&R) of the United States Magistrate Judge (Dkt. No. 20), and the Objections thereto (Dkt. No. 23). After conducting a de novo review of the challenged portions of the R&R, the Court ACCEPTS AND ADOPTS the findings and conclusions of the Magistrate Judge.

**Objections**

Petitioner's objections to the R&R are without merit for the reasons explained in the R&R, as briefly discussed below. First, Petitioner contends that he is entitled to relief because the trial court erred in failing to instruct the jury on the accomplice corroboration rule in connection with statements made by Javier Pellecer. Even assuming the trial court violated this state rule, Petitioner is not entitled to habeas relief. *See Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000) (noting that "the [corroboration rule] is not required by the Constitution or federal law"). Petitioner neglects to address this point.

Second, Petitioner contends that the trial court erred by failing to sever the homicide offenses. But he has not shown that any such error would entitle him to habeas relief for a violation of clearly established federal law. *See Runningeagle v. Ryan*, 686 F.3d 758, 776 (9th Cir. 2012) (noting that misjoinder has not been found to rise to the level of a constitutional violation). In any event, his conclusory assertions do not demonstrate that the trial court erred or that the joinder of claims rendered his trial fundamentally unfair.

Third, Petitioner contends that the admission of Pellecer's statements violated the Sixth Amendment's Confrontation Clause by running afoul of the rule established in *Bruton v. United States*, 391 U.S. 123 (1968).  This contention fails to consider Ninth Circuit law stating that "*Bruton's* rule now applies only to testimonial out-of-court codefendant statements." *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018).  In finding that Pellecer's statements to a confidential informant was not testimonial, the California Court of Appeal did not contravene clearly established law nor rely on an unreasonable determination of the facts.  Indeed, this finding is consistent with the conclusion reached by a number of federal courts.  *See, e.g.*, *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) (Sotomayor, J.) (concluding that statements made to a confidential information were not testimonial).

Fourth, Petitioner contends that he was deprived of a fair trial as a result of cumulative error.  However, he has not demonstrated any error.

Finally, Petitioner contends that Senate Bill 620 must be applied retroactively, and that this Court should remand the case to state court to give it an opportunity to decide whether to strike his firearm enhancements.  He fails to consider, however, the threshold question whether his quintessential state claim is subject to federal habeas review.  It is not.  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) (noting the general rule that "a state court's misapplication of its own sentencing laws does not justify federal habeas relief").

**<u>Request for Leave to Amend</u>**

Petitioner requests leave to amend so that he can raise an ineffective assistance of counsel claim.  At the end of his objections, he asserts:

> Petitioner would ask to be allowed to amend a new Ineffective Assistance of trial counsel claim to appellants Habeas Corpus. Failure tocall defense witness, Sylvia Westby, Stevie Lamont Jenkins (jail house informant), Nipsey Hustle AKA Ermias Asgherdom, and second (jail house informant), and Queron Batteys brother Dante, who accussed Battey of the Westby murder and ultimately was held from defense before trial which is exculpatory evidence that more likely than not, the outcome would be favorable to appellants outcome at trial.

Dkt. No. 23.

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a), but leave may be denied for "futility of amendment," among other reasons. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* 28 U.S.C. § 2242 (directing courts to apply the civil rules for amendment to habeas petitions). Because a state prisoner must exhaust the remedies available in state court before seeking federal habeas relief, 28 U.S.C. § 2254(b)(1)(A), an amendment would be futile if a petitioner seeks to add an unexhausted claim. *See Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004) (affirming denial of leave to amend when the petitioner had not presented the claim to the California Supreme Court).

In seeking to pursue his claim for ineffective assistance of counsel, Petitioner has not shown that he has exhausted his state remedies. He did not mention this theory or claim in his briefs before the California Court of Appeal or the California Supreme Court. *See* Dkt. No. 11. Petitioner's request suffers from an additional flaw: he provides only conclusory information about the claim he belatedly seeks to advance. A petitioner who challenges his counsel's trial performance bears the burden of overcoming the presumption that the challenged action or omission was the product of "sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Petitioner contends that his trial counsel was ineffective by failing to call certain witnesses, but his contention is wholly conclusory. Indeed, he does not even disclose what the witnesses would have stated if called, except cursorily for one witness—the brother of Queron Battey (who allegedly accused Battey of one of the murders for which Petitioner was convicted). Even then, he does not provide sufficient information to evaluate whether his trial counsel spoke with these witnesses and made a strategic decision not to call them. Nor does he explain how he could satisfy the *Strickland* standard for prejudice in light of weighty evidence against him at trial. Dkt. No. 11-22 at 16–17 of 20 (noting the "overwhelming evidence that [Petitioner] committed the murder").

Accordingly, the Court finds that amendment would be futile and denies Petitioner's request for leave to amend.

## **Conclusion**

IT IS THEREFORE ORDERED that:

1. The findings, conclusions, and recommendations in the Report and Recommendation are accepted.

2.  Judgment shall be entered denying and dismissing with prejudice the Petition for a Writ of Habeas Corpus.

3.  The Clerk shall serve copies of this Order, the Report and Recommendation, and the Judgment on Petitioner and all counsel of record.

IT IS SO ORDERED.

Date: May 10, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge

cc: SP Chambers

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10

11  WAYNE DINSMORE GRAY,              )   Case No. 2:20-cv-01844-SB (SP)
                                      )
12              Petitioner,           )   REPORT AND
                                      )   RECOMMENDATION OF UNITED
13         v.                         )   STATES MAGISTRATE JUDGE
                                      )
14  KELLY SANTORO, Warden,            )
                                      )
15              Respondent.           )
                                      )
16                                    )
17  _____  )

18       This Report and Recommendation is submitted to the Honorable Stanley

19  Blumenfeld, Jr., United States District Judge, pursuant to the provisions of 28

20  U.S.C. § 636 and General Order 05-07 of the United States District Court for the

21  Central District of California.

22                              **I.**

23                        **INTRODUCTION**

24       On February 26, 2020, petitioner Wayne Dinsmore Gray filed a Petition for

25  Writ of Habeas Corpus by a Person in State Custody ("Petition").  Petitioner

26  challenges his 2017 convictions in Los Angeles County Superior Court for three

27  counts of murder with firearm and gang enhancements, and one count of

28

possession of a firearm by a felon, for which he was sentenced to two consecutive terms of life without the possibility of parole plus 100 years to life.

Petitioner raises five grounds for relief: (1) error in not giving an accomplice jury instruction; (2) error in refusing to sever the murder counts; (3) Confrontation Clause violation when the trial court allowed the prosecution to introduce a transcript of a co-defendant's conversation into evidence; (4) cumulative error; and (5) a state sentencing law applies retroactively to his case.

For the reasons discussed below, petitioner's claims do not merit habeas relief.  It is therefore recommended that the Petition be denied with prejudice.

## II.

## STATEMENT OF FACTS[1]

***Prosecution's Evidence***

### The October 6, 2008 Murders of Columbus Campbell and Kavette Watson

The Rollin' 60's are a criminal street gang with approximately 2,000 members.  Their primary activities include robberies, burglaries, homicides, and vandalism.  Members of the gang are known to murder each other to gain respect and prestige.  The gang has a slogan related to these in-house murders: "[Y]ou are not really a true Rollin' 60 until you kill a Rollin' 60 gang member."

Petitioner was a member of the Rollin' 60's.  Columbus Campbell was also a Rollin' 60's Crips gang member.  In September 2008, petitioner was involved in a fight with Campbell in the presence of a famous rapper and Rollin' 60's gang member.  During the fight, Campbell struck petitioner "in a blind-sided shot and cut his eye."  Petitioner suffered a black eye.  Campbell won the fight.

---

[1]   The facts set forth are drawn substantially verbatim from the California Court of Appeal's decision on direct appeal. *See* Lodgment 7 at 3-7.  Such statement of facts is presumed correct.  28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

1      On October 6, 2008, petitioner asked Javier Pellecer, a fellow Rollin' 60's

2  gang member, to help him kill Campbell.  Pellecer agreed.  They found Campbell

3  sleeping in a parked car with Kavette Watson on 63rd Street and Crenshaw

4  Boulevard.  Pellecer pulled his car next to Campbell's car, a white Mercedes.

5  Petitioner got out of the car and shot Campbell and Watson.  Pellecer then drove

6  away.  The murders occurred within Rollin' 60's territory.

7      Los Angeles Police Department officer Thomas Callen arrived at the scene.

8  He saw the white Mercedes with the windows shot out.  Campbell's and Watson's

9  bodies were inside; they both had been shot in the head.  The police recovered 11

10  .40-caliber casings and an expended bullet.

11      A gang expert opined that a hypothetical crime based on the facts of

12  Campbell and Watson's murders were committed for the benefit of, at the direction

13  of, and in association with the Rollin' 60's.  Campbell got the best of petitioner in a

14  fight, and petitioner needed to retaliate.  The killing raised petitioner's status in the

15  gang and benefitted the gang by instilling fear and intimidation in the community.

16  **June 2, 2013, Murder of Charles Westby**

17      Dorset Village is an apartment complex within the Rollin' 60's territory.  In

18  June 2013, five or six members of the gang lived in the apartment complex,

19  including petitioner, Jerry Wilson, and Leon Panting.  Petitioner, Wilson, and

20  Panting were all members of the Dorset Village Clique, a subset of the Rollin'

21  60's.  The clique claimed Dorset Village as its territory.  Charles Westby lived in

22  Dorset Village, but was not a member of a gang.

23      Wilson and petitioner were "real close," like "father and son."  On June 2,

24  2013, Wilson noticed petitioner looked irritated and asked petitioner what was

25  wrong.  Petitioner stated that he was with three other individuals in the apartment

26  manager's garage shed when Westby approached them.  Petitioner and Westby had

27  an argument.  Petitioner told Westby to leave.  Westby pulled a gun on petitioner.

28

Westby pointed the gun at petitioner; he pulled the trigger, but the gun did not fire.

Wilson tried to calm petitioner down, but was unsuccessful.  Petitioner stated that he was going to kill Westby.  Panting arrived, and petitioner devised a plan to murder Westby.  Panting's role was to call Westby downstairs in the middle of the apartment complex.  Wilson's role was to call petitioner when Westby was on his way back to the back of the apartment complex.

Wilson and Panting left petitioner's apartment together.  They walked towards a tree in the middle of Dorset Village.  At some point, the two men separated, but Wilson heard Panting call Westby down.  Wilson then borrowed another Dorset Village's resident's cell phone to call petitioner. Petitioner asked where Westby was, and Wilson told him.  Five to seven seconds after petitioner hung up the phone, Wilson heard six to seven "rapid-fire" gunshots.

Los Angeles Police Department Officer Jose Bonilla arrived at the scene; Westby was visibly injured and taken to the hospital.  He later died from his injuries.

A gang expert opined that a hypothetical crime based on the facts of the murder of Westby was committed for the benefit of, at the direction of, and in association with the Rollin' 60's because petitioner felt disrespected when Westby pulled a gun on him in Rollin' 60's territory.  Everyone who participated in the murder had their gang status elevated.  The gang benefitted by instilling hear and intimidation in the community.

### Subsequent Events

Shortly after the murders, petitioner visited Queron Battey's apartment in Dorset Village.  Petitioner asked Battey for a drink, and Battey invited him inside. Battey gave petitioner a glass of water.  Petitioner then went to Battey's bedroom. Five minutes later, Battey went to the bedroom.  Petitioner was praying.  Battey and petitioner then had a conversation during which petitioner told Battey that he

1   had murdered Westby, and detailed how he had committed the murder.

2        Meanwhile, on October 16, 2013, Pellecer was detained by police and placed

3   in a jail cell with a confidential informant ("CI").  Pellecer explained to the CI how

4   he and petitioner had murdered Campbell and Watson.  He also admitted to getting

5   rid of the gun used by petitioner to murder Westby.

6        On February 9, 2017, Wilson reached a plea agreement.  He spoke to the

7   police and provided the details of the Westby murder.  At trial, he also testified that

8   petitioner admitted to killing Campbell and Watson and detailed the events

9   surrounding Westby's murder.

10   ***Defense Evidence***

11        Petitioner rested without testifying or providing an affirmative defense.

12   **III.**

13   **PROCEEDINGS**

14        On March 16, 2017, following a jury trial, petitioner was convicted of the

15   first degree murders of Charles Westby, Columbus Campbell, and Kavette Watson

16   (Cal. Penal Code § 187(a)) (counts one, two, and three), and of possession of

17   firearm by a felon (Cal. Penal Code § 29800(a)(1)) (count five).  Lodgment 1

18   (Clerk's Transcript ("CT")) at 1337-46.  As to all the murder counts, the jury found

19   true that petitioner committed the offenses for the benefit of, at the direction of, or

20   in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)(C)) and

21   that petitioner personally and intentionally discharged a firearm (Cal. Penal Code

22   § 12022.53(d)).  CT at 1337-45.  In count one, the jury also found true the special

23   circumstance of lying in wait  (Cal. Penal Code § 190.2(a)(15)).  CT at 1337.

24   Petitioner was sentenced to two consecutive sentences of life without the

25   possibility of parole plus 100 years to life.  CT at 1359-60, 1367.

26        Petitioner, represented by counsel, appealed his conviction, raising claims of

27   instructional error, severance denial error, violation of the Confrontation Clause,

28

5

cumulative error, and state sentencing law remand.  Lodgment 4.  On January 15, 2019, the California Court of Appeal, in a reasoned decision, affirmed the judgment.  Lodgment 7.

Petitioner filed a petition for review in the California Supreme Court, presenting the same issues raised below except for the cumulative error claim. Lodgment 8.  The California Supreme Court summarily denied the petition for review on April 24, 2019.  Lodgment 9.

## IV.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court generally looks to the last reasoned state court decision as the basis for the state court's justification. *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018) ("the federal court should 'look through' the unexplained decision to the last related state-court decision" and "presume that the unexplained decision adopted the same reasoning").  Here, the California Court of Appeal's opinion on January 15, 2019 stands as the last reasoned decision on all Grounds raised in the Petition. Lodgment 7.

1

**V.**

2

**DISCUSSION**

3

**A.      Petitioner Is Not Entitled to Relief on His Instructional Error Claim**

4           In Ground One, petitioner argues his rights to due process and a fair trial

5    were violated when the trial court failed to sua sponte instruct the jury on the

6    state's accomplice corroboration rule with respect to the statements of Javier

7    Pellecer.  Petition at 5, 17-18, 46-57.[2]  Specifically, petitioner contends the missing

8    instruction "effectively lightened the state's burden of proof" because there "was

9    no identification" of petitioner as the shooter in the 2008 murders of Campbell and

10   Watson.  *Id.* at 46, 50.  Moreover, petitioner argues that the state appellate court's

11   "error in the interpretation or application of state law was so egregious as to offend

12   federal due process standards under the Sixth and Fourteenth Amendment," citing

13   *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L. Ed. 175 (1980).  *Id.*

14   at 18.

15          Pellecer made numerous admissions regarding the murders to a confidential

16   informant ("CI") when he shared a jail cell with the CI in 2013.  CT at 1224-48.

17   In those statements, Pellecer discussed his and petitioner's involvement in both the

18   2008 and 2013 murders.  Regarding the 2008 murders, Pellecer stated that

19   petitioner got out of Pellecer's car, which Pellecer drove, and shot into another car

20   killing a man who previously upset petitioner and a "sixteen-year old girl" who

21   was also in the car.  CT at 1237-38.  He noted that both victims were sleeping in

22   the car when they were shot.  CT at 1237.  Pellecer also gave the cross streets

23   where the murders occurred.  CT at 1238.  Additionally, Pellecer told the CI that he

24   helped petitioner get rid of the gun used in the 2013 murder.  CT at 1239-40.

25          At petitioner's trial, the prosecution tried to call Pellecer as a witness, but

26

27          [2]    Citations to pages in the Petition are to the electronic page numbers supplied

28   by the court's CM/ECF system.

7

Pellecer refused to take the oath or testify and was held in contempt.  Lodgment 3 (Reporter's Transcript ("RT")) at 1948-51.  The court found Pellecer was unavailable, and the prosecution introduced a recording and transcript of the conversation between Pellecer and the CI into evidence.  RT at 1981-82, 2514-15.  The court had previously determined Pellecer's statements in the recording were admissible as statements against interest.  RT at S-37.  In addition to Pellecer's prior statements, the prosecution presented testimony by Wilson – one of petitioner's co-defendant's from the 2013 murder – that petitioner confessed to Wilson that he killed Campbell because Campbell punched petitioner, and he also killed the girl with Campbell because she started screaming.  RT at 1877-78.

California Penal Code § 1111 commands that a "conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense."  But not all statements given out of court constitute testimony for purposes of § 1111.  In particular, "'when the out-of-court statements are not given under suspect circumstances, those statements do not qualify as 'testimony' and hence need not be corroborated under . . . section 1111.'"  *People v. Williams*, 16 Cal. 4th 153, 245, 66 Cal. Rptr. 2d 123, 940 P.2d 710 (1997) (citation omitted).  "'The most obvious suspect circumstances occur when the accomplice has been arrested or is questioned by the police.'"  *Id.* (citation omitted).

Here, the California Court of Appeal rejected petitioner's contentions.  The court found the "trial court properly admitted Pellecer's statements into evidence under the hearsay exception for statements against penal interest."  Lodgment 7 at 8 (citing Cal. Evid. Code § 1230).  The court further found "Pellecer's confession was sufficiently trustworthy and reliable" to warrant admission given that he made it "in a noncoercive setting" to someone he thought was a "fellow inmate" and he took responsibility for his role in the killings, giving "specific details of the crimes."  *Id.* at 9.  The Court of Appeal concluded that "'no corroboration was

8

necessary, and the [trial] court was not required to instruct the jury to view [Pellecer's] statement with caution and to require corroboration.'" *Id.* at 10 (quoting *People v. Brown*, 31 Cal. 4th 518, 556, 3 Cal. Rptr. 3d 145, 73 P.3d 1137 (2003)). The Court of Appeal also found that "any assumed error was 'manifestly harmless.'" *Id.* (citation omitted). The court reasoned that there was "ample corroborating evidence in the record," noting Wilson's testimony and the other eyewitness accounts of a shooter who matched petitioner's description. *Id.*

Normally, challenges to jury instructions given in state court trials do not provide a basis for federal habeas relief because they concern state law. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (questions of state law are not cognizable on federal habeas review); *Van Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir. 1986) ("Claims that merely challenge the correctness of jury instructions under state law cannot reasonably be construed to allege a deprivation of federal rights."). A challenge to a jury instruction based on a state law violation may be entitled to federal habeas relief only when the instruction implicates fundamental fairness. *Estelle*, 502 U.S. at 72. "'[T]he ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).

To determine whether an instruction "infected the entire trial," the "challenged instruction must be considered in light of the full set of jury instructions and the trial record as a whole." *Gibson v. Ortiz*, 387 F.3d 812, 821 (9th Cir. 2004) (overruled on other grounds); *see Waddington v. Sarausad*, 555 U.S. 179, 191, 129 S. Ct. 823, 172 L. Ed. 2d 532 (2009); *Doe v. Busby*, 661 F.3d 1001, 1018 (9th Cir. 2011) (isolated statements may seem prejudicial but are not when considered in the context of the entire trial). Moreover, "[t]he omission of an instruction is 'less likely to be prejudicial than a misstatement of the law.'" *See Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1987) (quoting *Henderson v. Kibbe*,

9

431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)).  Thus, a petitioner

"whose claim involves a failure to give a particular instruction bears an especially

heavy burden." *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (internal

quotation marks omitted).

Here, petitioner's claim of jury instruction error is merely a matter of state

law.  Thus, the claim is not cognizable.  Even assuming error, the error did not

implicate fundamental fairness.

Petitioner has made no showing, and nothing in the record would indicate,

that the trial court's failure to instruct the jury that Pellecer was an accomplice and

therefore his statements had to be viewed with caution and required corroboration

infected the entire trial, particularly in light of Wilson's testimony that petitioner

confessed to the 2008 murders.  Moreover, while a state violates a criminal

defendant's due process right when it arbitrarily deprives the defendant of a state

law entitlement (*Hicks*, 447 U.S. at 346; *Laboa v. Calderon*, 224 F.3d 972, 979

(9th Cir. 2000)), no such arbitrary denial occurred here.  As set forth above, the

Court of Appeal reasonably determined the trial court committed no error in

omitting an accomplice instruction as to Pellecer's statements because, under

California law, the statements do not constitute testimony for purposes of § 1111.

This court is bound by the state court's finding that Pellecer's statements were

admissible under state law without need for corroboration. *See Bradshaw v.

Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005).  In short, the

trial court's failure to give a jury instruction on accomplice testimony with respect

to Pellecer's statements did not implicate fundamental fairness.

Moreover, the Supreme Court has never decided a state court must instruct a

jury on accomplice testimony.  The Ninth Circuit has said that this "state law

requirement that a conviction be based on more than uncorroborated accomplice

testimony" is "not required by the Constitution or federal law." *Laboa*, 224 F.3d at

979.  Therefore, the Court of Appeal's rejection of the claim cannot be contrary to

clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (finding that when the Supreme Court has not provided a clear answer to the legal question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (internal quotations omitted); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (same); *see also Gonzalez v. Johnson*, 2021 WL 5701385, at *12 (C.D. Cal. July 8, 2021) (collecting cases finding no cognizable claim where petitioner only challenges that accomplice testimony was uncorroborated).

      Accordingly, petitioner is not entitled to relief on Ground One, which does not present a cognizable federal habeas claim.

**B.**    **Petitioner Is Not Entitled to Relief on His Confrontation Clause Claim**

      Petitioner argues in Ground Three that the introduction of Pellecer's statements to the CI into evidence violated his rights under the Confrontation Clause. In particular, petitioner argues that the admission of the statements by Pellecer, his co-defendant, violated *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Petition at 6, 86-114.

      The Sixth Amendment's Confrontation Clause "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (internal quotation marks omitted). In *Crawford v. Washington*, the United States Supreme Court held that the Confrontation Clause allows "[t]estimonial statements of witnesses absent from trial [to be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004). The Supreme Court has since clearly held that the Confrontation Clause does not bar nontestimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to

11

traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."); *see also Crawford*, 541 U.S. at 68.

While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, it has recognized that "statements made unwittingly to a Government informant" and "statements from one prisoner to another" are "clearly nontestimonial." *Davis*, 547 U.S. at 825. Lower federal courts have also relied on this definition of "testimonial" to find that statements made unknowingly to confidential informants do not implicate the Confrontation Clause. *See U.S. v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) ("a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*") (Sotomayor, J.); *U.S. v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (same); *U.S. v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) (same); *U.S. v. Udeozor*, 515 F.3d 260, 270 (4th Cir. 2008) (same); *U.S. v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006) (same); *U.S. v. Hendricks*, 395 F.3d 173, 182-84 (3d Cir. 2005) (same); *Allen v. Montgomery*, 2020 WL 8265500, at *11 (C.D. Cal. Oct. 23, 2020) (collecting cases).

In *Bruton*, the Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated when a facially incriminating confession of a non-testifying co-defendant is admitted at a joint trial. 391 U.S. at 135-36. But following *Crawford*, the Ninth Circuit joined other circuit courts to conclude that "*Bruton*'s rule now applies only to testimonial out-of-court codefendant statements." *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018); *see Smith v. Chavez*, 565 Fed. Appx. 653, 653 (9th Cir. 2014) (finding *Bruton* inapplicable to out-of-court statement by co-defendant that was not testimonial).

Here, petitioner and Pellecer were charged as co-defendants in May 2014. CT at 625-32. In April 2016, the trial court granted Pellecer's motion to sever. CT at 1075. As discussed above with respect to Ground One, Pellecer's statements contained admissions to a CI regarding his and petitioner's involvement in the

2008 and 2013 murders.  The California Court of Appeal determined that "Pellecer's statements to the CI were not testimony," and therefore there was no *Bruton* violation. Lodgment 7 at 14-16.  In particular, the Court of Appeal found Pellecer's statements to the CI were not testimonial for purposes of the Confrontation Clause because Pellecer made them unwittingly to a CI whom he believed was a fellow prisoner.  This characterization of the statements is well supported by the transcript of Pellecer's lengthy conversation with the CI.  *See* CT at 1226-48.

Given this, and given that *Crawford* and *Bruton* only apply to testimonial statements, the California Court of Appeal's denial of petitioner's claim in Ground Three was neither contrary to clearly established federal law nor an unreasonable determination of facts.

**C.**   **Petitioner Is Not Entitled to Relief on His Motion to Sever Claim**

In Ground Two, petitioner argues the trial court erroneously denied his motion to sever the trial on count 1 (the 2013 murder of Westby) from the trial on counts 2 and 3 (the 2008 murders of Campbell and Watson).  Petition at 5, 58-86.  Petitioner contends that the joint trial "resulted in a weak case being tried with a very strong case [that] resulted in a fundamentally unfair trial" in violation of his rights to due process and a fair trial.  *Id.* at 59.

The California Court of Appeal found "that the trial court did not abuse its discretion by denying" petitioner's severance motion.  Lodgment 7 at 12.  Rather, it found that the "[j]oinder of the three murders was proper" under state law since "the offenses are 'of the same class of crimes.'"  *Id*.  Moreover, assuming error, the court found that petitioner "has not shown prejudice." *Id.*

To the extent petitioner argues the three counts were improperly consolidated in one trial in violation of state law, the claim is not cognizable on federal habeas review.  *See Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000).  Federal habeas relief is only available for violations of "clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Clearly established law under AEDPA "refers to the holdings, as opposed to the dicta" by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

There is no such clearly established federal law regarding a right to severance in state trials.  On the contrary, the Ninth Circuit has "made clear that the Supreme Court's observation in *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986), that 'misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial' is dicta and does not 'establish a constitutional standard binding on the states.'"  *Walden v. Shinn*, 990 F.3d 1183, 1196 (9th Cir. 2021) (quoting *Collins v. Runnels*, 603 F.3d 1127, 1131 (9th Cir. 2010)); *accord Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012) ("there is no clearly established federal law requiring severance of criminal trials in state court").  Accordingly, the Ninth Circuit has held that severance claims do not present a cognizable question on federal habeas review since no clearly established law exists.  *Runningeagle*, 686 F.3d at 776-77; *Collins*, 603 F.3d at 1131-32; *see also Comeaux v. McDowell*, 2016 WL 3574337, at *13 (C.D. Cal. May 13, 2016) (applying Ninth Circuit precedent on the issue to find that petitioner is not entitled to relief because "California courts' rejection of this claim cannot be contrary to, or an unreasonable application of, clearly established federal law.").

Where federal courts have considered habeas relief on a severance claims, it has typically been where AEDPA did not apply or its applicability was in question.  *See, e.g., Walden*, 990 F.3d at 1196 (AEDPA's applicability challenged); *Sandoval v. Calderon*, 241 F.3d 765, 771 (9th Cir. 2001) (finding pre-AEDPA law governs case); *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991) (pre-AEDPA). In such cases, the Ninth Circuit has held that federal habeas corpus relief is available for improper consolidation only if the "simultaneous trial of more than

one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." *Featherstone*, 948 F.2d at 1503; *see Walden*, 990 F.3d at 1196; *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of prejudice is reached only if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict."). Important – although not dispositive – in the determination is whether evidence for one count would be cross-admissible in the trial for the other count. *Walden*, 990 F.3d at 1196-97; *Sandoval*, 241 F.3d at 772 (risk of undue prejudice is "particularly great whenever joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible"). "A finding of 'cross-admissibility dispels the prejudicial impact of joining all counts in the same trial [as t]he jury would have heard the evidence in any event.'" *Walden*, 990 F.3d at 1197 (quoting *Sandoval*, 241 F.3d at 772).

Here, AEDPA does apply and therefore Ground Two does not present a cognizable claim for federal habeas relief. But even if cognizable, it fails on its merits because the record does reflect that the joinder rendered the trial fundamentally unfair. The California Court of Appeal did not unreasonably determine that petitioner failed to demonstrate any prejudice from the joinder. It explained that some "evidence would have been cross-admissible in separate trials," including gang expert testimony and Pellecer's statements to the CI, which pertained to all three murders. Lodgment 7 at 12. The Court of Appeal also found there was strong evidence as to both the 2008 murders and 2013 murder, and they were similar in nature and egregiousness and therefore neither was likely to unduly inflame the jury against petitioner. *Id.* at 13-14. As such, petitioner has not shown the denial of his severance motion rendered his trial fundamentally unfair.

For these reasons, petitioner is not entitled to relief on Ground Two.

**D.** **Petitioner Is Not Entitled to Relief on His Cumulative Error Claim**

In Ground Four, petitioner contends that the "cumulative effect of multiple

15

errors" in Grounds 1, 2, and 3 "rendered petitioner's trial fundamentally unfair." Petition at 6, 121-22.

This claim does not appear to be exhausted. Petitioner raised this claim to the California Court of Appeal. Lodgment 4 at 114-15. But the Petition for Review does not include a cumulative error claim. Lodgment 8. Consequently, the claim is unexhausted. *Petrocelli v. Baker*, 869 F.3d 710, 725 (9th Cir. 2017) (to be properly exhausted the claim must be fairly presented "to the highest court of the state") (quoting *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011)). Nonetheless, because "it is perfectly clear" that the unexhausted cumulative error claim "does not raise even a colorable federal claim," the court should deny this claim on the merits. *See Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

The "combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973)). But when there is not a single constitutional error, there is "nothing to accumulate to a level of a constitutional violation." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Here, petitioner did not demonstrate that any constitutional error occurred. As a result, petitioner's cumulative error claim fails.

## E.   Petitioner's Sentencing Claim Is Not Cognizable

In Ground Five, petitioner contends Senate Bill 620 must be applied retroactively to his case. Petition at 6, 122. SB 620 retroactively granted state trial courts discretion to strike previously-mandated firearm enhancements. The California Court of Appeal "decline[d] to remand the case for resentencing." It reasoned "the appellate record shows that there is no reasonable possibility that the trial court would exercise its discretion to lessen the sentence." Lodgment 7 at 17.

Petitioner does not present a cognizable claim with Ground Five. Claims challenging a state court's interpretation and application of state sentencing or

enhancement laws are generally not subject to federal habeas review.  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("[A] state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Various California District Courts have found that claims related to SB 620 do not raise federal constitutional issues.  *E.g.*, *McVey v. Santoro*, 2021 WL 6118771, at *6 (C.D. Cal. Aug. 11, 2021); *Basped v. Asuncion*, 2021 WL 1062562, at *1 (E.D. Cal. Feb. 19, 2021); *Godfrey v. Warden PVSP*, 2020 WL 3544980, at *2 (N.D. Cal. June 30, 2020).  This claim simply does not present a cognizable federal issue that this court can review.

## VI.

## **RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: March 15, 2023

SHERI PYM
United States Magistrate Judge

17